UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID HACKSHAW, JR., and MANUEL CUEVAS, individually and on behalf of all persons similarly situated,<br>Plaintiffs,<br><br>-against-<br><br>LINDA STRUMPF,<br>Defendant. | **No. 24 Civ. 8397**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiffs David Hackshaw, Jr. and Manuel Cuevas bring this action against Linda Strumpf, a debt collection attorney, to stop, and recover damages for, her unlawful debt collection activity against themselves and similarly situated consumers. They bring this action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the FDCPA) and New York law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' federal claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201(a) and 2202.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because it is the district where a substantial part of the events giving rise to Plaintiffs' claims occurred—namely, it is the district in which Strumpf obtained judgments against Mr. Hackshaw and Mr. Cuevas and the district in which TCI was located and filed bankruptcy.

## PARTIES

***Plaintiffs***

4. Named Plaintiff David Hackshaw, Jr. is a natural person residing in Brooklyn, New York.

5. Named Plaintiff Manuel Cuevas is a natural person residing in Manhattan, New York.

6. Plaintiffs are a "consumers" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3), in that Plaintiffs were alleged to owe a debt stemming from an unpaid balance on a consumer account.

***Defendant Linda Strumpf***

7. Defendant Linda Strumpf is a natural person and an attorney registered with the state of New York, bar license # 1327402, with her principal place of business located at 69 Fox Run, South Salem, NY.

8. Strumpf collects debt from over 2,500 New York City consumers each year.

9. Linda Strumpf is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that she regularly uses the instrumentalities of interstate commerce in her businesses, the principal purpose of which is the collection of debts, and is engaged in the business of collecting consumer debts via various means, including wage garnishment, bank restraint and levy, and civil debt collection lawsuits.

10. Linda Strumpf holds herself out as operating a debt collection business called The Law Office of Linda Strumpf, which holds debt collection license number 2050539-DCA.

11. However, no business entity called "The Law Office of Linda Strumpf" appears in the New York State Department of State Corporation and Business Entity Database or in the Connecticut Business Records Search.

## FACTUAL ALLEGATIONS

***TCI College and Its Bankruptcy***

12. The Technical Career Institutes, Inc. ("TCI") was a for-profit college in Midtown Manhattan that offered Associate's Degrees in technology-related fields that permanently closed on September 1, 2017.

13. Before it closed, TCI sued many of its students to collect on tuition and fees purportedly owed to the school.

14. Before it closed, TCI retained attorney Linda Strumpf to bring many of these collection lawsuits.

15. Public court records show that Strumpf represented TCI in at least 1,200 collections lawsuits in New York City Civil Court before the school closed.

16. Many of these cases resulted in judgments (the "TCI Judgments"), entered before the school closed.

17. On November 13, 2017, TCI filed for Chapter 7 bankruptcy. *In re Technical Career Institutes*, *Inc.*, No. 17-13232 (Bankr. S.D.N.Y.).

18. At no point did Chapter 7 bankruptcy trustee ("Trustee") authorize Strumpf to collect on the TCI Judgments on behalf of TCI's bankruptcy estate ("Estate").

19. Strumpf continued to collect on TCI Judgments after November 13, 2017.

20. When Strumpf collected on TCI Judgments after November 13, 2017, she purported to do so on behalf of TCI.

21. In late 2018, the Trustee became aware that Strumpf had been collecting on TCI Judgments. The Trustee further became aware that Strumpf was purporting to do so on behalf of TCI.

22. On March 18, 2019, the Trustee directed Strumpf via email and phone to refrain from all further action to obtain, enforce, or collect on judgments obtained on behalf of TCI. The Trustee also directed Strumpf to file notices in active litigations stating that proceedings are stayed pending further proceedings in the bankruptcy court.

23. Strumpf continued to collect on TCI Judgments after March 18, 2019.

24. When Strumpf collected on TCI Judgments after March 18, 2019, she continued to purport to do so on behalf of TCI.

25. On September 22, 2020, the Trustee issued the final decree in TCI's bankruptcy. No property was available for distribution to TCI's creditors.

26. Strumpf continued to collect on TCI Judgments after September 22, 2020.

27. When Strumpf collected on TCI Judgments after September 22, 2020, she continued to purport to do so on behalf of TCI.

28. On information and belief, Strumpf undertook all collections on TCI Judgments from November 13, 2017 to the present without having been retained by any client, without consulting with any client, without informing any client, and without passing on any funds collected to any client.

29. Strumpf's collection on TCI Judgments continued through at least the end of 2023.

30. On information and belief, Strumpf's collection on TCI Judgments continues to date.

***Plaintiff David Hackshaw, Jr.***

31. Plaintiff David Hackshaw, Jr. is a forty-six year old resident of Brooklyn, New York.

32. Mr. Hackshaw attended TCI for a few months in 2007 and 2008.

33. Three weeks into his second semester, Mr. Hackshaw withdrew from TCI.

34. Unbeknownst to Mr. Hackshaw at the time, Strumpf filed *Technical Career Institute v. David Hackshaw Jr.* ("*TCI v. Hackshaw*"), Index Number 002056-10/NY, in New York City Civil Court, New York County against him on behalf of TCI on January 15, 2010, to collect approximately $5,000 in purportedly unpaid "tuition and/or supplies" related to Mr. Hackshaw's attendance at TCI.[1]

35. On information and belief, this purportedly owed tuition stemmed from the period after Mr. Hackshaw withdrew from TCI.

36. Mr. Hackshaw was never served with a summons and complaint in *TCI v. Hackshaw*.

37. The affidavit of service filed in *TCI v. Hackshaw* stated that service was effectuated on Mr. Hackshaw at an address where Mr. Hackshaw did not live at the time.

38. On December 1, 2010, a default judgment was entered against Mr. Hackshaw in the amount of $6,286.22.

39. Mr. Hackshaw had never heard of *TCI v. Hackshaw*, had no other notice of the action or the judgment, and had never heard of Strumpf, until December 2023.

40. On November 8, 2023, Strumpf issued an income execution to New York City Marshal Gregg Bienstock in connection with *TCI v. Hackshaw* (the "Income Execution").

[1] The formal legal name of TCI was "Technical Career Institutes, Inc." However, Strumpf typically referred to the school as "Technical Career Institute," including in her pleadings, collection activity, and the judgments themselves.

41. Strumpf signed the Income Execution as attorney for TCI.

42. The Income Execution stated that Mr. Hackshaw owed $6,286.22 plus thirteen years' worth of accrued interest to satisfy a judgment in *TCI v. Hackshaw*.

43. The Income Execution provided directions to Mr. Hackshaw, stating: "**You are notified and commanded immediately** to start paying to the Enforcement Officer serving a copy of this Income Execution on you" a portion of "any and all salary, wages or other income. . . and to continue paying such installments until the judgment with interest and the fees and expenses of this Income Execution are fully paid and satisfied." (emphasis in original).

44. On November 28, 2023, Marshal Bienstock sent a Notice of Garnishment to Mr. Hackshaw.

45. The Notice of Garnishment enclosed the Income Execution.

46. The Notice of Garnishment stated that Mr. Hackshaw owed a total of $13,611.66, including the $6,286.22 judgment amount, plus over $7,300 in interest and fees, in connection with the *TCI v. Hackshaw* judgment.

47. In December 2023, Mr. Hackshaw received the Notice of Garnishment and Income Execution. This was the first time that Mr. Hackshaw learned of the *TCI v. Hackshaw* judgment.

48. Upon receiving the Notice of Garnishment and Income Execution, Mr. Hackshaw was extremely concerned. Not only was he worried that he purportedly owed money to TCI and could have his wages garnished, but he was worried that he would be unable to obtain his TCI transcript, which he needed because he was in the process of enrolling at the City University of New York (CUNY).

49. Mr. Hackshaw reached undersigned counsel at the New York Legal Assistance

Group (NYLAG), a non-profit provider of free legal services. NYLAG has extensive experience advising student loan borrowers and ran a hotline for TCI students following the school's closure to provide them free legal advice.

50. On December 11, 2023, NYLAG, on behalf of Mr. Hackshaw, sent a letter to Strumpf demanding that she "immediately withdraw the income execution issued against Mr. Hackshaw or produce documentation indicating the basis of [her] authority to act on behalf of TCI following the conclusion of its liquidation via chapter 7 bankruptcy."

51. On December 14, 2023, Strumpf sent to Mr. Hackshaw, via NYLAG, an affirmation stating that she instructed the Marshal to close the file and return the income execution to her office.

52. On December 18, 2023, Strumpf sent to Mr. Hackshaw, via NYLAG, a blank release that she requested Mr. Hackshaw complete, which provided that in exchange for $1 of consideration, Mr. Hackshaw would "release[] and forever discharge[] Technical Career Institute" and "any and all former, present and future officers, directors, representatives, agents, attorneys, employees, subsidiaries, parents, partners, affiliates, heirs, executors, administrators, or their respective successors and assigns" from all claims arising "from the beginning of the world to the day of the date of this RELEASE," including, but not limited to "any and all alleged improper debt collection acts, including claims alleged to be based upon the FDCPA."

53. On December 19, 2023, Strumpf stated to NYLAG that she would initiate a new income execution against Mr. Hackshaw if he did not sign the release.

54. Mr. Hackshaw did not sign the release.

55. As a result of Strumpf's actions, Mr. Hackshaw has experienced harm.

56. Mr. Hackshaw spent time and effort seeking an attorney who could help him challenge the Income Execution. Strumpf's sudden attempt to garnish Mr. Hackshaw's wages also caused him considerable stress and emotional distress, which had negative effects on his health. Mr. Hackshaw was very concerned not only that Strumpf would take his money, but also that this collection would prevent him from being able to continue his education at CUNY.

57. Further, Mr. Hackshaw faces the risk of future collection by Strumpf, because, at any time, she may again seek to garnish his wages or utilize other coercive enforcement mechanisms to collect on the judgment against him. This threat has caused additional stress and emotional distress.

***Plaintiff Manuel Cuevas***

58. Plaintiff Manuel Cuevas is a forty-eight year old resident of Manhattan, New York.

59. Mr. Cuevas attended TCI for a few months in 2005.

60. Mr. Cuevas withdrew during his first semester at TCI.

61. Unbeknownst to Mr. Cuevas, Strumpf filed *Technical Career Institute v. Manuel D.S. Cuevas* ("*TCI v. Cuevas*"), Index Number 033092-08/NY, in New York City Civil Court, New York County against him on behalf of TCI on May 16, 2008, to collect approximately $3,000 in purportedly unpaid "tuition and/or supplies" related to Mr. Cuvas's attendance at TCI.

62. On information and belief, this purportedly owed tuition stemmed from the period after Mr. Cuevas withdrew from TCI.

63. On January 15, 2009, a default judgment was entered against Mr. Cuevas in the amount of $4,206.03.

64. Mr. Cuevas was never was never served with a summons and complaint in *TCI v.*

*Hackshaw*.

65. The affidavit of service filed in *TCI v. Cuevas* stated that service was effectuated on Mr. Cuevas by handing the papers to a "Bianca Cuevas," but Mr. Cuevas does not know, and has never met, anyone with that name.

66. The affidavit of service was completed by process server Harry Torres. In February 2009, less than a year after he purported to serve Mr. Cuevas, Harry Torres was barred by New York City's Department of Consumer Affairs from serving process in New York City for five years as part of a resolution of charges against him that he had violated the rules governing service of process in New York City.

67. On March 4, 2022, Strumpf sent to Mr. Cuevas an information subpoena pursuant to N.Y. C.P.L.R. § 5224 (the "Information Subpoena").

68. Strumpf signed the Information Subpoena as attorney for TCI.

69. The Information Subpoena stated that Mr. Cuevas owed $4,206.03 plus accrued interest to satisfy the *TCI v. Cuevas* judgment.

70. The Information Subpoena also stated that Mr. Cuevas owes "$9179.87 together with interest thereon from March 04 2022."

71. The Information Subpoena stated to Mr. Cuevas: "WE COMMAND YOU, that you answer the within questions in writing under oath, separately and fully" within seven days.

72. The Information Subpoena directed Mr. Cuevas to answer 166 individual questions and also directed him to attach documents in response to many of these questions.

73. The Information Subpoena stated that "failure to comply with this subpoena is punishable as a contempt of court."

74. Before receiving the Information Subpoena in March 2022, Mr. Cuevas did not

understand that there was a lawsuit or judgment that had been filed against him in *TCI v. Cuevas*.

75. Upon receiving the Information Subpoena, Mr. Cuevas was very concerned that he was threatened with contempt of court.

76. Once he received the Information Subpoena, Mr. Cuevas called Strumpf's office to inquire about it.

77. A representative of Strumpf told him that if he did not comply with the Information Subpoena, a warrant would be issued for his arrest.

78. Mr. Cuevas was very concerned that he could be arrested.

79. Mr. Cuevas then called New York City Civil Court, which told him that he could come to court to file a motion to vacate the judgment against him.

80. On March 18, 2022, Mr. Cuevas went in person to New York City Civil Court, New York County, to file a *pro se* Motion to Vacate the *TCI v. Cuevas* judgment.

81. In his motion, Mr. Cuevas swore that he "was never served" or "notified" of the debt.

82. At the time Mr. Cuevas filed his *pro se* motion to vacate, the affidavit of service was held in the court's file archives and he had no access to it. As a result, Mr. Cuevas could not present the strongest facts in support of his motion: namely, that the process server who claimed to have served him was barred by New York City from serving process due to documented misconduct, that he had never met anyone named Bianca Cuevas, the person purportedly served, and that no one with that name lived with him. Further, Mr. Cuevas did not have an attorney to assist him.

83. On April 13, 2022, a first court date was held for Mr. Cuevas's motion. Mr. Cuevas appeared in court. Strumpf had not served or filed any opposition to Mr. Cuevas's

motion. A representative of Strumpf attempted to convince Mr. Cuevas to settle the case. Mr. Cuevas did not agree to do so. The judge ordered a second court date.

84. On June 3, 2022, a second court date was held for Mr. Cuevas's motion. Strumpf had still not served or filed any opposition to Mr. Cuevas's motion. The judge ordered a third court date.

85. On June 6, 2022, Strumpf served Mr. Cuevas with a copy of her opposition to his motion to vacate the judgment against him.

86. Strumpf filed this opposition with the Court after serving it.

87. Strumpf signed the opposition as attorney for TCI.

88. Strumpf signed the opposition "under the penalties of perjury."

89. On July 6, 2022, a third court date was held for Mr. Cuevas's motion.

90. On August 17, 2022, the judge issued an opinion denying Mr. Cuevas's *pro se* motion to vacate the judgment against him.

91. After the judge's decision, Strumpf or her representative told Mr. Cuevas by phone that he needed to pay Strumpf or else Strumpf would levy his bank account.

92. Strumpf or her representative told Mr. Cuevas, in sum and substance, that "we're going to get you." Mr. Cuevas understood this to mean that Strumpf's office would take his money no matter what steps he took.

93. Mr. Cuevas was afraid that if Strumpf levied his bank account, she would take the full amount of the judgment and accrued interest, which was nearly $10,000.

94. On September 21, 2022, Strumpf sent Mr. Cuevas a stipulation of settlement.

95. The Stipulation of Settlement stated that Mr. Cuevas would pay "the Plaintiff" in *TCI v. Cuevas*—that is, TCI itself, "the sum of $750.00 no later than January 1, 2023"; that his

payment "shall be automatically deducted from [his] debit or credit card account"; and that he "agrees to provide the Law Office of Linda Strumpf with his account information."

96. The Stipulation of Settlement further stated that upon execution, Mr. Cuevas would release TCI and its "representatives" and "assigns" from potential legal claims.

97. On information and belief, Strumpf signed this Stipulation electronically in late 2022.

98. Strumpf's signature block on this Stipulation of Settlement stated that she was "Attorney for Plaintiff"—that is, as "Attorney for" TCI.

99. Mr. Cuevas believes that he may have signed this Stipulation electronically in late 2022.

100. Mr. Cuevas paid Strumpf $750 in December 2022.

101. Throughout Strumpf's collection actions against Mr. Cuevas, she and/or her representatives made repeated written and oral representations that she was acting on behalf of TCI. As a result, Mr. Cuevas believed that Strumpf was acting on behalf of TCI.

102. Mr. Cuevas would not have signed the Stipulation of Settlement or paid Strumpf $750 if had he known that Strumpf was not acting on behalf of TCI; that Strumpf had no legal authority to act on behalf of TCI; and that the money he was purportedly paying to TCI was in fact being paid to Strumpf, not to TCI.

103. Until February 2024 when alerted by NYLAG, Mr. Cuevas did not know that Stumpf was not acting on behalf of TCI; that Strumpf had no legal authority to act on behalf of TCI; and that the money he thought he had paid to TCI was in fact being paid to Strumpf, not to TCI.

104. The release contained in the Stipulation of Settlement does not cover Strumpf, by

its own terms. Strumpf was not acting as an agent or representative of TCI.

105. Strumpf's actions were designed to conceal their fraudulent nature by omitting that Stumpf was not acting on behalf of TCI; that Strumpf had no legal authority to act on behalf of TCI; and that the money Mr. Cuevas thought he paid to TCI was in fact being paid to Strumpf, not to TCI.

106. As a result of Strumpf's actions, Mr. Cuevas has experienced harm.

107. Mr. Cuevas spent time and effort to try to vacate the judgment against him, including traveling to New York City Civil Court four times. Mr. Cuevas incurred out of pocket expenses, including lost wages for work missed due to attending court, postage, and photocopies. Mr. Cuevas also experienced emotional distress; the Information Subpoena and the many court appearances placed him under considerable stress, which had negative effects on his sleep and health. Mr. Cuevas was particularly worried about Strumpf's threats that he would be arrested for failing to comply, and that Strumpf would take a significant sum of money from his bank account.

***Class Action Allegations***

108. Plaintiffs bring this action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a Class consisting of:

> All individuals against whom Strumpf, on or after November 13, 2017, has attempted or will attempt to collect on a judgment, purportedly on behalf of the Technical Career Institute.

109. The class is so numerous that joinder of all Class Members in this action would be impracticable.

110. Strumpf is the attorney of record on at least 1,200 collection actions filed by TCI before it declared bankruptcy.

111. On information and belief, the vast majority of these collection actions resulted in judgments in favor of TCI.

112. Public court records show that Strumpf has collected on many consumers purportedly on behalf of TCI since November 13, 2017.

113. On information and belief, Defendant Strumpf has attempted to collect on judgments against many other former TCI students.

114. The vast majority of Strumpf's collection efforts would not be recorded in public court records, because court records do not typically show dunning letters, information subpoenas, wage garnishments, bank levies, or bank restraints. Court records would also not reflect collections efforts made by telephone.

115. All individuals with TCI Judgments entered against them risk collection from Strumpf in the future, unless the judgment has previously been vacated or satisfied.

116. The precise number and identity of Class Members is contained within Strumpf's business and litigation records.

117. Class members present common questions of law and fact.

118. The common questions of fact include, but are not limited to, what collection activity Strumpf conducted purportedly on behalf of TCI.

119. The common questions of law include, but are not limited to: whether Strumpf had any legal authorization to collect against Plaintiffs and Class Members on behalf of TCI and whether Strumpf's collection efforts are unfair, deceptive, or misleading in violation of the FDCPA and the New York G.B.L. § 349.

120. Plaintiffs' claims are typical of the claims of the Class. Strumpf engaged in collection activity against Plaintiffs and Class Members, purporting to be acting on behalf of TCI.

121. Plaintiffs will adequately and fairly protect the interests of all members of the proposed Class because they have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed Class.

122. Plaintiffs are represented NYLAG. Attorneys at NYLAG are experienced in complex federal litigation, class action litigation, and consumer protection litigation.

123. Strumpf has acted and will continue to act in a similar manner toward each member of the Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

124. Unless enjoined, Strumpf will cause future harm to Class Members by continuing to collect funds from them, purporting to be collecting on behalf of TCI.

125. Common questions presented predominate over any individual questions.

126. A class action is the superior method for a fair and efficient adjudication of this matter in that Strumpf has acted in the same manner toward the Class as a whole and a class action will avoid numerous separate actions by Class Members that would unduly burden the courts and create the possibility of inconsistent decisions.

127. Moreover, it would be impracticable for Class Members, who are, on information and belief, primarily low-income individuals, to obtain legal counsel on an individual basis to bring claims of the type raised in this action. Hence their rights under the law may well be meaningless without certification of a class action seeking common redress.

128. Strumpf's actions have caused harm to Plaintiffs and Class Members, including but not limited to: funds paid to Strumpf, including funds paid coercively via wage garnishment or bank levy; deprivation of access to funds via bank restraint; out of pocket expenses incurred in responding to Strumpf's collection efforts, such as lost wages, childcare costs, photocopying, travel, and postage; and emotional distress.

**FIRST CAUSE OF ACTION**
Violation of the FDCPA, 15 U.S.C. §§ 1692d, 1629e, 1692f

129. The FDCPA, 15 U.S.C. § 1692d, prohibits a debt collector from using "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

130. The FDCPA, 15 U.S.C. § 1692e, prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

131. The FDCPA, 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

132. Strumpf's conduct violated the FDCPA, §§ 1692d, 1692e, 1692f.

133. As a direct and proximate result of Strumpf's violations, Plaintiffs and Class Members have suffered compensable harm and are entitled to recover actual and statutory damages, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**
Violation of N.Y. Gen. Bus. § 349

134. New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business . . . in this state" and provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name" for injunctive relief, damages, and attorneys' fees.

135. Strumpf violated N.Y. Gen. Bus. § 349 by engaging in deceptive acts and practices in the conduct of their business.

136. Strumpf's actions were consumer oriented and had a broad impact on New York consumers at large.

137. Strumpf committed the above-described acts willfully and/or knowingly.

138. Strumpf's wrongful and deceptive acts have caused injury and damages to Plaintiffs and putative Class Members and unless enjoined, will cause further irreparable injury.

139. As a direct and proximate result of Strumpf's violations, Plaintiffs and putative Class Members have suffered compensable harm and are entitled to recover actual and treble damages, costs, and attorneys' fees.

## THIRD CAUSE OF ACTION
Violation of N.Y. Jud. Law § 487

140. New York Judiciary Law § 487 states that "[a]n attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . is guilty of misdemeanor [and] . . . forfeits to the party injured treble damages, to be recovered in a civil action."

141. Strumpf violated New York Judiciary Law § 487 by engaging in deceit or collusion, or consenting to deceit or collusion, with the intent to deceive courts and opposing parties.

142. Strumpf's conduct constituted a chronic pattern of extreme and egregious deceit.

143. Strumpf committed the above-described acts willfully and/or knowingly.

144. Strumpf's wrongful and deceptive acts have caused injury and damages to Plaintiffs and putative Class Members and, unless enjoined, will cause further irreparable injury.

145. As a direct and proximate result of these violations of New York Judiciary Law § 487, Plaintiffs and putative Class Members have suffered compensable harm and are entitled to recover actual and treble damages.

**FOURTH CAUSE OF ACTION**
Fraud

146. Strumpf made false representations and omissions of material facts to Plaintiffs and Class Members.

147. Strumpf knew these representations or material omissions were false.

148. Strumpf intended that Plaintiffs and Class Members rely on her false statements and material omissions.

149. Plaintiffs and Class Members relied on Strumpf's false statements and material omissions, to their detriment.

150. Strumpf committed the above-described acts willfully and/or knowingly.

151. Strumpf committed the above-described acts maliciously and recklessly, or her conduct was gross, wanton, and willful, evidencing a high degree of moral culpability and moral turpitude.

152. As a direct and proximate result of Strumpf's actions, Plaintiffs and putative Class Members have suffered compensable harm and are entitled to recover actual and punitive damages.

**FIFTH CAUSE OF ACTION**
Conversion

153. Plaintiffs and Class Members owned and had a right to possession of their funds.

154. Strumpf exercised dominion and control over the funds of Plaintiffs and Class Members.

155. The funds of Plaintiffs and Class Members over which Strumpf exercises dominion and control are specific and identifiable.

156. Strumpf's exercise of dominion and control over Plaintiffs' and Class Members' funds was unauthorized.

157. Strumpf's exercise of dominion and control over Plaintiffs' and Class Members' funds interferes with and is in defiance of the superior possessory right to those funds held by Plaintiffs and Class Members.

158. Strumpf committed the above-described acts willfully and/or knowingly.

159. Strumpf committed the above-described acts with malice and/or with reckless or willful disregard of Plaintiffs' and Class Members' rights.

160. As a direct and proximate result of Strumpf's actions, Plaintiffs and putative Class Members have suffered compensable harm and are entitled to recover actual and punitive damages.

**SIXTH CAUSE OF ACTION**
Unjust Enrichment

161. Plaintiffs and Class Members owned and had a right to possession of their funds.

162. Strumpf enjoyed the benefit of Plaintiffs' and Class Members' funds by actually enriching herself and possessing the funds of Plaintiffs and Class Members.

163. Strumpf's enrichment of herself was unauthorized.

164. Plaintiffs and Class Members were not adequately compensated for Strumpf's use of their funds.

165. Plaintiffs' and Class Members' funds, in equity and good conscience, should be paid back to them.

166. Strumpf committed the above-described acts willfully and/or knowingly.

167. As a direct and proximate result of Strumpf's actions, Plaintiffs and putative Class Members have suffered compensable harm and are entitled to recover actual damages.

## SEVENTH CAUSE OF ACTION
Negligence

168. Strumpf, as a debt collector, owes a duty of reasonable care to alleged debtors, including Named Plaintiffs and Class Members, in collecting their debts.

169. Strumpf breached this duty of care.

170. Strumpf owes duties of care to Named Plaintiffs and Class Members set forth by statute and regulation, including but not limited to Fair Debt Collection laws, such as 15 U.S.C. §§ 1692d, 1692e, 1692f; and Unfair and Deceptive Trade Practices laws, such as N.Y. G.B.L. § 349.

171. Strumpf breached these duties of care.

172. The legislative purpose of each of these statutes and regulations is to protect a certain class of persons, namely alleged consumer debtors, of which all Named Plaintiffs and Class Members are members.

173. As a direct and proximate result of Strumpf's actions, Named Plaintiffs and Class Members have suffered and continue to suffer compensable harm and are entitled to recover actual damages.

WHEREFORE, Plaintiffs request that this Court enter judgment:

a. Certifying this case as a class action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, with a Class defined as:

> All individuals against whom Strumpf, on or after November 13, 2017, has attempted or will attempt to collect on a judgment, purportedly on behalf of the Technical Career Institute.

b. Declaring that Strumpf has committed the violations of law alleged in this action;

c. Enjoining and directing Strumpf to cease engaging in unlawful debt collection practices;

d. Awarding to Plaintiffs and the putative Class:

   i. actual and/or compensatory damages in an amount to be proven at trial;

   ii. statutory damages pursuant to the FDCPA;

   iii. treble damages pursuant to N.Y. G.B.L. § 349(h) and N.Y. Jud. Law § 487;

   iv. punitive damages pursuant to common-law fraud and conversion;

   v. disbursements, costs, and attorneys' fees pursuant to the FDCPA and N.Y. G.B.L. § 349; and

e. Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: November 4, 2024
New York, New York

Lisa Rivera, Esq.
NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl St., 19th Floor
New York, NY 10004
(212) 613-5000

By:

______________________________
Jessica Ranucci, of counsel
Danielle Tarantolo, of counsel
(212) 613-7578
jranucci@nylag.org
dtarantolo@nylag.org